PEOPLE v SHARBNOW

Docket No. 99066. Submitted October 18, 1988, at Detroit. Decided
January 3, 1989. Leave to appeal applied for.

Ernest Sharbnow was convicted of seven counts of first-degree
criminal sexual conduct and one count of child cruelty follow-
ing a jury trial in the Wayne Circuit Court. The trial court,
Henry J. Szymanski, J., sentenced defendant to seven concur-
rent terms of from thirty to fifty years imprisonment for the
CSC convictions and a concurrent term of from twenty-six to
forty-eight months imprisonment for the child cruelty convic-
tion. Defendant appealed alleging numerous errors.

The Court of Appeals held:

1. The trial judge's conduct and comments did not unduly
influence the jury to the extent that it deprived defendant of a
fair and impartial trial. The record reveals no actual bias or
prejudice by the trial judge which would have required the
judge to excuse himself.

2. Certain complained-of comments by the prosecutor were
not erroneous. Defendant was not denied a fair trial in this
regard.

3. Defendant obtained an impartial jury and has no valid
grounds for complaint regarding the trial court's refusal to
dismiss two prospective jurors for cause.

4. The trial court did not abuse its discretion in allowing the
prosecution to play portions of an adult movie taken from
defendant's home. The evidence was relevant.

5. The trial court did not abuse its discretion in denying

REFERENCES

Am Jur 2d, Appeal and Error §§ 622, 623.5, 624-627, 851; Criminal
Law §§ 984 et seq.; Judges §§ 166 et seq.; Jury §§ 233 et seq.; New
Trial §§ 164 et seq.

Admissability of videotape film in evidence in criminal trial. 60
ALR3d 333.

Modern status of rules and standards in state courts as to adequacy
of defense counsel's represetation of criminal client. 2 ALR4th 27.

defendant's motion for a new trial based on newly discovered evidence.

6. Defendant's claim that the jury verdict was contrary to the great weight of the evidence is meritless.

7. Defendant was not denied the effective assistance of counsel.

8. Defendant's sentence does not shock the conscience of the Court of Appeals.

Affirmed.

1. CRIMINAL LAW — APPEAL — PRESERVING QUESTION.

Failure to make timely objection to alleged improper comments by a trial judge precludes appellate review absent manifest injustice.

2. TRIAL — JUDICIAL IMPARTIALITY.

The test to determine whether a trial judge's conduct or comments pierced the veil of judicial impartiality, thus requiring reversal, is whether the judge's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.

3. CRIMINAL LAW — APPEAL — PRESERVING QUESTION.

Failure to make timely objection to alleged prejudicial prosecutorial remarks precludes appellate review unless the prejudicial effect was so great that it could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice.

4. CRIMINAL LAW — JURY — PEREMPTORY CHALLENGES — APPEAL.

A defendant has no valid grounds to complain that the trial judge abused his discretion in refusing to dismiss two prospective jurors challenged for cause where the two jurors should have been dismissed for cause and the defendant eventually dismissed the two jurors through peremptory challenges, the defendant only exercised seven of the twenty peremptory challenges allowed him, and the defendant expressed his satisfaction with the jury.

5. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — APPEAL.

A trial court's ruling on a motion for a new trial based on newly discovered evidence will not be disturbed absent a clear abuse of discretion.

6. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

A trial court may grant a motion for a new trial on the basis of

newly discovered evidence where: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) including the new evidence upon retrial would probably cause a different result; and (4) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; newly discovered evidence is not grounds for a new trial where it would be used merely for impeachment purposes.

7. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.
   The issue of ineffective assistance of counsel should be raised by a motion for a new trial or an evidentiary hearing; failure to so move generally forecloses appellate review, however, review may be granted where the appellate record contains sufficient detail to support the defendant's position; such review is limited to the record.

8. CRIMINAL LAW — ASSISTANCE OF COUNSEL.
   Trial counsel is presumed to have provided effective assistance and this presumption can only be overcome by a showing of counsel's failure to perform an essential duty which was prejudicial to the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Mary Sue Czarnecki,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Before: SULLIVAN, P.J., and MURPHY and M. WARSHAWSKY,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of seven counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and one count of child cruelty, MCL 750.136; MSA 28.331. Defendant was sentenced to seven concurrent thirty- to fifty-year prison terms for the CSC

---

* Circuit judge, sitting on the Court of Appeals by assignment.

convictions and a concurrent term of twenty-six to forty-eight months imprisonment for the child cruelty conviction.

The victim, who was born in April, 1973, testified that she lived with defendant, her father, from the summer of 1984 through February, 1986. The first instance of sexual conduct occurred in the summer of 1984 when defendant asked the victim to go to his bedroom because he wanted to feel her tan. When she went into the bedroom, defendant told her to pull her pants down. Defendant then penetrated her vagina with his penis, his tongue and his finger. Defendant told her that he did not do anything wrong and not to tell anybody, that it was their secret. Defendant also indicated that he would get into a lot of trouble and go to prison if anyone found out.

In the fall of 1984 defendant penetrated the victim on two different occasions. The fourth instance occurred around Christmas, 1984. The fifth and sixth sexual incidents which involved defendant penetrating the victim's vagina with his penis occurred in the summer of 1985. Finally, during Christmas of 1985 defendant repeated the same act.

Defendant also allowed the victim to watch pornographic movies. On one occasion he told her to watch a movie and that he wanted to have sex with her. The victim also indicated that she had twice taken a bath with her father. At that time, defendant asked her to wash his penis.

Police Officer Michele Marshall testified that on May 30, 1986, she searched defendant's residence after obtaining a search warrant. Marshall seized a videotape which showed multiple sex acts between men and women. The prosecutor played at trial two ten-minute portions of this tape which had been described by the victim earlier.

Dr. Barbara Lucas, a pediatrician, testified that she examined the victim on May 6, 1986. Lucas spent about 1½ hours taking the victim's history and conducting a physical examination. The victim told Lucas that her father had been having sex with her and that he put his privates inside her and moved his body up and down on her. The victim also said defendant asked her to give him a blow job but she refused.

During the physical examination, Lucas found that the victim's hymen was completely ruptured. There was hymenal tissue around the edges of the vagina. This tissue was very minimal and was completely rounded off. Lucas said that the victim had the equivalent of a married woman's vagina. Lucas also testified that she had no difficulty in inserting three fingers in the vagina, which is highly unusual for a child of thirteen years. Lucas' diagnosis was that defendant's daughter was the victim of chronic sexual abuse with full vaginal penetration on several occasions.

Defendant denied sexually assaulting his daughter. Moreover, he denied watching the videotape with her. In addition, he said that he did not drink liquor and never offered his daughter schnapps or vodka.

After defendant was convicted, he moved for a new trial based on newly discovered evidence. An evidentiary hearing was held on January 30, 1987. Dr. Ellen Alano testified that on December 2, 1986, she gave the victim a vaginal examination because of a suspected vaginal rash. The victim complained of pain when two fingers were inserted in her vagina. The hymenal tissue indicated that intercourse probably had occurred on more than one occasion. Alano's only dispute with the previous medical testimony was regarding the attempt to fix the number of times intercourse had taken

place. The trial court found that Alano's testimony was not material and further that it was generally consistent with Lucas' and therefore denied defendant's motion.

Defendant now raises nine issues on appeal, none of which requires reversal.

Defendant first contends that the trial judge made numerous comments during the course of the trial which indicated bias and aroused suspicion in the minds of the jurors. Moreover, defendant contends that the trial judge belittled defense counsel, answered questions for the complainant and chastised defense witnesses. In total, these actions allegedly deprived defendant of a fair trial. We disagree.

Initially, we note that defendant failed to object to the alleged improper comments and therefore this issue has not been preserved for appeal absent manifest injustice. *People v Collier,* 168 Mich App 687, 697; 425 NW2d 118 (1988). In *Collier,* p 698, this Court set forth a standard of review for conduct of the trial judge:

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." [Citations omitted.]

We have carefully and thoroughly considered each of defendant's nine contentions on this issue and conclude that the trial judge's conduct and

comments did not unduly influence the jury to the extent that it deprived defendant of a fair and impartial trial.

Defendant next claims that the record discloses actual bias or prejudice which should have required that the trial judge disqualify himself sua sponte. Our review of the record reveals no actual bias or prejudice which would have required the judge to excuse himself.

Defendant's third contention is that prosecutorial misconduct denied him a fair trial. Again, there was no objection by defense counsel to the now-challenged comments. The absence of an objection during trial precludes appellate review of alleged prejudicial prosecutorial remarks unless the prejudicial effect was so great that it could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice. *People v Jansson,* 116 Mich App 674, 692; 323 NW2d 508 (1982). However, since this issue is related to defendant's allegations of ineffective assistance of counsel, we will briefly address the merits of this argument.

This Court in *Jansson, supra,* p 693, set forth the following guidelines for prosecutorial comment:

> Further, as an advocate, the prosecutor is free to relate the facts to his theory of the case and to argue the evidence and all reasonable inferences from it to the jury. *People v Ernest Smith,* 87 Mich App 18; 273 NW2d 573 (1978). A prosecuting attorney has the right to comment upon the testimony in a case, to argue upon the facts and evidence that a witness is not worthy of belief and to contend that a defendant is lying. *People v Caldwell,* 78 Mich App 690; 261 NW2d 1 (1977).
>
> Finally, where improper prosecutorial remarks are made in response to issues previously raised by

a defense counsel, they do not constitute reversible error. A prosecutor may properly respond to the innuendos of defense counsel that his witness is fabricating testimony. *People v Giombetti,* 97 Mich App 399, 405; 296 NW2d 41 (1980), rev'd on other grounds sub nom [*People v*] *Adkins* 411 Mich 934; 308 NW2d 98 (1981).

A complete review of the alleged improper comments reveals that the prosecutor was relating the evidence which he intended to present to the jury. During closing argument, the prosecutor emphasized to the jurors that they had to judge the credibility of the witnesses. Finally, defendant contends that the prosecutor improperly compared defendant's character to Richard Nixon's. During trial, defense counsel argued that defendant was worthy of belief because he did not destroy or otherwise dispose of the videotape for over two months during which he had notice of the allegations. Defendant argued that this proved that he had nothing to hide. During closing argument, the prosecutor compared this act of not destroying the videotape to Richard Nixon's act of turning over his incriminating tapes. Defendant argues that this comment requires reversal because of the likelihood that the jury would compare defendant's character to Richard Nixon's. Defendant relies on *People v Kelley,* 142 Mich App 671; 370 NW2d 321 (1985), where the prosecutor referred to John Wayne Gacey, a man convicted of murdering boys after having homosexual relations with them, during a criminal sexual conduct trial. The Court found the comment improper because of the great likelihood that the character of the defendant would be compared to Gacey's, and distinguished *People v Jerry Smith,* 122 Mich App 106; 332 NW2d 428 (1982), rev'd on other grounds 417 Mich 1100.39 (1983), and *People v Rowen,* 111 Mich App

76; 314 NW2d 526 (1981) (references to Charles Manson and Jack Ruby not error).

In this case, the crimes of defendant and Nixon were not similar. The prosecutor was merely arguing that the fact that defendant did not destroy the tapes proves nothing, therefore, we find no error on this issue.

Defendant next claims that the trial judge abused his discretion by refusing to dismiss two prospective jurors challenged for cause after their comments exhibited a bias which would prevent them from rendering a just verdict.

The trial judge noted before voir dire began that he strictly interpreted challenges for cause. Nevertheless, the voir dire of the two prospective jurors indicates that they probably should have been dismissed for cause. Defendant eventually dismissed the two prospective jurors through peremptory challenges. Defendant exercised seven peremptory challenges out of the twenty he was entitled to under MCL 768.13; MSA 28.1036. Defense counsel expressed satisfaction with the jury. Therefore, defendant apparently obtained an impartial jury and he has no valid grounds for complaint. See, e.g., *People v Badour,* 167 Mich App 186, 188-190; 421 NW2d 624 (1988).

Defendant's fifth claim of error is that the trial judge abused his discretion when he permitted the prosecutor to play portions of an adult movie at trial. Specifically, defendant claims that the showing of the videotape constituted needless presentation of cumulative evidence. In addition, the probative value was allegedly outweighed by the danger of unfair prejudice. We disagree.

The admission of the videotape is closely analogous to the admission of photographic evidence:

Admission of photographic evidence lies within

the sound discretion of the trial court. *People v Eddington*, 387 Mich 551, 561-563; 198 NW2d 297 (1972); *People v Rocha*, 110 Mich App 1, 13; 312 NW2d 657 (1981), lv den 413 Mich 912 [1982]. The reviewing court must determine whether the photographs were substantially necessary or instructive to show material facts or conditions or were merely calculated to excite passion and prejudice. *People v Falkner*, 389 Mich 682, 685; 209 NW2d 193 (1973). Photographs which are pertinent, relevant, competent or material on any issue are not inadmissible merely because they show shocking or gruesome details of the crime. *People v Fuzi #2*, 116 Mich App 277, 281; 323 NW2d 358 (1982). [*People v Stewart*, 126 Mich App 374, 377-378; 337 NW2d 68 (1983).]

The videotape was relevant because it served as direct evidence of part of the element of depravity of the child cruelty charge. MCL 750.136; MSA 28.331. The victim's testimony indicated that her father had told her to watch the movie and she was able to give a brief description of what she saw. Throughout the trial, defendant attacked the credibility of the victim, contending that she was a difficult child and had fabricated stories in the past. Therefore, we conclude that the trial judge did not abuse his discretion in allowing the prosecutor to play a twenty-minute portion of the six-hour videotape.

Defendant's next claim of error is that the trial judge abused his discretion when denying his motion for a new trial based on newly discovered evidence. Specifically, defendant claims that the new evidence revealed that, while the victim may have had intercourse, it was impossible to determine the number of times. Moreover, defendant claims that Dr. Alano's findings differed markedly from those of Dr. Lucas and probably would raise considerable doubt whether the victim had ever

engaged in intercourse. Therefore, defendant alleges that Alano's testimony would probably result in a different verdict. We disagree.

A trial court's ruling on a motion for a new trial based on newly discovered evidence will not be disturbed absent a clear abuse of discretion. *People v Beckley,* 161 Mich App 120, 130; 409 NW2d 759 (1987). Defendant must meet a four-part test showing that

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) including the new evidence upon retrial would probably cause a different result; and (4) the party could not, using reasonable diligence, have discovered and produced the evidence at trial. [*People v Bradshaw,* 165 Mich App 562, 567; 419 NW2d 33 (1988).]

Newly discovered evidence is not grounds for a new trial where it would be used merely for impeachment purposes. *People v Stricklin,* 162 Mich App 623, 632; 413 NW2d 457 (1987).

In this case, Dr. Lucas testified at trial that the condition of the victim's vagina was consistent with chronic sexual abuse indicating repeated sexual intercourse. At the evidentiary hearing, Dr. Alano testified that she was able to insert only one finger whereas Dr. Lucas had been able to insert three fingers. Dr. Alano's only dispute with the previous information was an attempt to fix the number of times sexual intercourse had occurred. Therefore, the evidence was not really newly discovered; Dr. Alano merely disputed Dr. Lucas' ability to fix the number of times intercourse may have taken place. Even if Dr. Alano's testimony is considered newly discovered evidence, it is still not grounds for a new trial because it would be used merely to impeach Dr. Lucas' testimony. It is also

important to note that the examination with Dr. Lucas took place five months after the last sexual incident, and the Alano examination over eleven months later. Dr. Alano testified that there could be tightening of the vagina and that the victim was in pain when Dr. Alano examined her. Therefore, the new evidence would probably not cause a different result. In summary, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Defendant next claims that the jury verdict was contrary to the great weight of the evidence because the victim's testimony was inconsistent. We disagree.

An objection going to the great weight of the evidence can be raised only by a motion for a new trial. *People v Strong,* 143 Mich App 442, 450; 372 NW2d 335 (1985). Although defendant in this case did move for a new trial, the basis for that motion was that there was newly discovered evidence, not that the verdict was against the great weight of the evidence. Defendant has therefore failed to preserve this issue for appeal. *Bradshaw, supra,* pp 565-566. In any event, defendant's claim is meritless. The credibility of a witness is a matter of weight, not sufficiency. Determinations of credibility are made by the jury which heard the testimony and observed the witnesses. See, e.g., *People v Scotts,* 80 Mich App 1, 9; 263 NW2d 272 (1977).

Defendant's eighth claim of error is that he was denied the effective assistance of counsel through the following acts and omissions: (1) counsel failed to object to hearsay and prejudicial questions; (2) counsel objected too late to showing the videotape and failed to move to suppress evidence of the videotape; (3) counsel referred to charges as obnoxious; and (4) counsel reelicited harmful testimony.

The issue of ineffective assistance of counsel

should be raised by a motion for a new trial or an evidentiary hearing. *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973). Failure to so move usually forecloses appellate review. However, review may be granted where the appellate record contains sufficient detail to support defendant's position. If so, review is limited to the record. *People v Kenneth Johnson,* 144 Mich App 125, 129-130; 373 NW2d 263 (1985). Trial counsel is presumed to have provided effective assistance and this presumption can only be overcome by a showing of counsel's failure to perform an essential duty which was prejudicial to the defendant. *People v Carr,* 141 Mich App 442; 367 NW2d 407 (1985).

We have carefully and thoroughly reviewed each of defendant's allegations on this issue and conclude that defendant was not denied the effective assistance of counsel under the tests set forth in *People v Garcia,* 398 Mich 250, 265; 247 NW2d 547 (1976), or *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We reach this conclusion based on the following:

(1) Counsel's failure to object to any alleged hearsay or prejudicial questions was a matter of trial strategy.

(2) Any failure to file a motion to suppress or object to the introduction of the videotape would have been futile. The admission of the videotape was proper. Therefore, an earlier objection would have, at the most, resulted in an earlier ruling on admissibility.

(3) Defendant's defense was an attack on the victim's credibility and a reference to the charges by counsel in opening argument as "obnoxious" is consistent with the strategy employed.

(4) As for any reeliciting of harmful testimony, the record indicates that defense counsel was try-

ing either to elicit the circumstances under which defendant said that he was a failure as a father or to establish if this statement was made at all.

Defendant's last claim of error is that his sentence should shock the appellate court's conscience. It does not. See *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983).

Defendant's convictions and sentences are affirmed.